UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x

ANDRE K. ANTROBUS,

                Plaintiff,

      -against-                        **MEMORANDUM AND ORDER**
                                                          19-CV-6277 (RPK) (TAM)

CITY OF NEW YORK,

                Defendant.

-------------------------------------------------------x

RACHEL P. KOVNER, United States District Judge:

In this lawsuit, *pro se* plaintiff Andre K. Antrobus alleges that the City of New York discriminated and retaliated against him in connection with his employment at the New York City Department of Sanitation. For the reasons discussed below, defendant's motion for judgment on the pleadings is granted in part and denied in part.

## BACKGROUND

The following factual allegations are taken from the complaint. Plaintiff's papers opposing the motion for judgment on the pleadings have also been considered when helpful to clarify the pleadings. *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013); *Milano v. Astrue*, No. 05-CV-6527 (KMW) (DF), 2007 WL 2668511, at *2 (S.D.N.Y. Sept. 7, 2007).

### A.    Factual Background

Plaintiff Andrew K. Antrobus is a black man of West Indian descent. Third Am. Compl. ¶ 1 (Dkt. #37). He has a bachelor's degree in computer information systems from Baruch College. *Id*. ¶ 4. In 2001, he began working as a clerical associate for the New York City Department of Sanitation ("DSNY"). *Id*. ¶ 5.

1

Plaintiff claims that soon after he started working for DSNY, he "experienced racism and national origin-based discrimination from coworkers and supervisors, including but not limited to derogatory name calling and unwarranted discipline and payroll deductions." *Id*. ¶ 6. In 2011, plaintiff filed a lawsuit regarding this alleged discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. *See Antrobus v. New York City Dep't of Sanitation*, No. 11-CV-5434 (CBA) (LB), 2016 WL 5390120, at *1 (E.D.N.Y. Sept. 26, 2016). This Court granted summary judgment to DSNY, *id*. at *2, and the Second Circuit affirmed, *Antrobus v. New York City Dep't of Sanitation*, 704 F. App'x 27, 27–28 (2d Cir. 2017).

In the current lawsuit, plaintiff claims that since his prior lawsuit, DSNY has discriminated against him on the basis of his gender, race, color, and national origin, and has retaliated against him for bringing this lawsuit. Third Am. Compl. ¶¶ 18, 74, 78, 104.

1. *Sex Discrimination.*

Plaintiff alleges that DSNY has discriminated against him based on sex by failing to promote him. According to plaintiff, DSNY promotes employees based on a ranked list of candidates that have taken and passed a civil service examination for a particular position. *Id*. ¶ 19. In September 2016, plaintiff took the civil service examination for a computer associate position and received a perfect score. *Id*. ¶¶ 20–21, 24. DSNY published a ranked list of individuals eligible for the promotion, and plaintiff ranked third. *Id*. ¶¶ 25–26. The highest-ranking employees—Tamara Catala and Eleanor Hicks—are both female and also received perfect scores. *Id*. ¶ 27. Plaintiff asserts that "[a]t the time of the exam, Ms. Catala . . . had worked as only a provisional (*i.e.*, not permanent) employee" and thus "was not in fact eligible to take [the] civil service exam" or "be considered for promotion to Computer Associate." *Id*. ¶ 34.

2

After DSNY published the promotion list, several female employees—Vivian Chan, Carolyn Ho, Kendra Ellis, and Mei Hang Guo—successfully appealed their examination scores. Opp'n ¶ 22. Chan received a perfect score, and the other three employees received a lower score than plaintiff. *See* Third Am. Compl. ¶¶ 36, 41; *see* Answer to Third Am. Compl., Ex. E. DSNY published a revised promotion list, which ranked Chan first, Hicks second, and plaintiff third. Third Am. Compl. ¶ 36. Ho, Ellis, and Hang Guo were ranked fourth, fifth, and sixth, respectively. *Ibid*.

Plaintiff alleges that DSNY later produced yet another version of the list of individuals eligible to be promoted to computer associate after plaintiff filed a sex-discrimination charge with a state agency in 2018. *Id*. ¶¶ 47–48, 52. That list ranked Chan first, Hicks second, plaintiff third, Ellis fourth, Hang Guo fifth, and three male employees sixth through eighth. *Id*. ¶¶ 49–50.

Plaintiff asserts that DSNY promoted to computer associate every female employee that appeared on either the first or second promotion list, but it did not promote him. *Id*. ¶¶ 16, 38–40, 45.

2. *Discrimination Based on Race, Color, and National Origin.*

Plaintiff alleges that defendant also discriminated against him because of his race, color, and national origin through several workplace incidents.

First, in March 2018, a DSNY superintendent threatened to file a complaint against plaintiff after the superintendent overheard a white sanitation worker threaten to slap plaintiff. *Id*. ¶ 57. In June 2018, a supervisor "repeatedly disrespected Plaintiff by using profanity towards him" and later "asked the Plaintiff to do some of his work." *Id*. ¶ 60. In July 2018, a superintendent "reversed Plaintiff's [Family Medical Leave Act status] to working status without Plaintiff's knowledge, forcing him into AWOL status." *Id*. ¶¶ 65–66. And in January 2019, a supervisor

3

"yelled at Plaintiff in a belligerent tone using the 'f' word" until plaintiff called 911. *Id.* ¶¶ 68–69. Plaintiff also asserts, without more detail, that he "is regularly reprimanded for behavior that white workers are not reprimanded for" and that he "is treated differently and more negatively than white employees . . . [and] employees from the United States." *Id*. ¶¶ 73–74.

    3. *Retaliation.*

In his operative Third Amended Complaint, plaintiff alleges that since he filed this lawsuit in July 2019, *see* Notice of Removal ¶ 1 (Dkt. #1), DSNY has retaliated against him in three principal ways. First, he asserts that in January 2020, DSNY changed his work shift "from the more desirable daytime shift to the less desirable overnight shift." Third Am. Compl. ¶ 81. He also states that "on multiple occasions," defendant incorrectly calculated the night shift's pay differential, resulting in him being paid "an amount less than what he is entitled." *Id*. ¶¶ 84–85. Plaintiff concedes that DSNY's "payroll department [has] 'corrected' the Department's calculation of Plaintiff's compensation," but he alleges that DSNY still owes him "approximately several hundred dollars of underpaid wages." *Id*. ¶¶ 87–88.

Second, plaintiff contends that defendant "fabricated" what he describes as "pretextual complaints" against him. *Id*. ¶¶ 92, 108. Specifically, in August 2020, plaintiff received a "failure to supervise" complaint after he allegedly failed to call and report an accident to DSNY's Operations, and he received another complaint in January 2021 after refusing to sign his annual evaluation. *Id*. ¶¶ 101, 107.

Third, plaintiff claims that a DSNY superintendent told him a few months after he filed the present lawsuit that he could be "on call" for a promotion that he was "not guaranteed," but only if he dismissed this case. *Id*. ¶¶ 109–12.

4

Plaintiff further alleges that he "has been disrespected and talked down to," *id*. ¶ 95, that defendant has on multiple occasions "turned off the heat in [his] office, which makes it very cold and uncomfortable," *id*. ¶ 94, that he has occasionally been asked to do other employees' work assignments, *id*. ¶ 96, and that a supervisor yelled at him for not answering his radio while he was on another call with the Chief of Sanitation, *id*. ¶ 115.

**B.     Procedural History**

Plaintiff filed suit against the City of New York and DSNY in Kings County Supreme Court on July 26, 2019, and then amended his complaint. Notice of Removal ¶¶ 1–2. The amended complaint can be read to assert claims for disparate treatment based on gender and retaliation in violation of Title VII. Defendants removed the case to federal court and filed a partial motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Notice of Mot. to Partially Dismiss the Compl. 1 (Dkt. #12). The motion sought to dismiss all claims against DSNY, all claims of retaliation, and all claims based on alleged disparate treatment before November 1, 2017.

Defendant argued that the complaint failed to state a plausible retaliation claim and that plaintiff's claims were time-barred to the extent that they alleged discriminatory or retaliatory acts that occurred before November 17, 2017. Mem. & Order 4 (Dkt. #19). This Court agreed and granted the motion. *Id*. at 12.

Thereafter, plaintiff filed a second amended complaint and then the operative third amended complaint. Liberally construed, the third amended complaint alleges: (i) the City of New York failed to promote plaintiff due to his gender, in violation of Title VII, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.*; (ii) the City discriminated against plaintiff based on his race, color, and national origin, in violation of the same statutes; (iii) the City

5

retaliated against plaintiff for filing this lawsuit, in violation of the same provisions. *See generally* Third Am. Compl.

Defendant moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c).

## STANDARD OF REVIEW

Motions for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) and motions to dismiss under Rule 12(b)(6) are evaluated under the same standard. *Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir. 2004). In evaluating either motion, a court must "accept[] all factual claims in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Lotes Co., Ltd. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 403 (2d Cir. 2014) (quoting *Famous Horse v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010)). To avoid dismissal, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint, in other words, must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. While the plausibility standard "is not akin to a 'probability requirement,'" it requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).

"[O]n a motion for judgment on the pleadings, courts may consider all documents that qualify as part of the non-movant's 'pleading,' including (1) the complaint or answer, (2) documents attached to the pleading, (3) documents incorporated by reference in or integral to the pleading, and (4) matters of which the court may take judicial notice." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 306 (2d Cir. 2021) (citation omitted). "But a court may not resolve the motion by weighing the plausibility of competing allegations or by considering

6

evidence extrinsic to the non-movant's pleading without converting the motion to one for summary judgment." *Ibid.* Because plaintiff is proceeding *pro se*, his submissions "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020).

## DISCUSSION

Defendant's motion for judgment on the pleadings is granted in part and denied in part. The Court grants defendant's motion with respect to plaintiff's claims of discrimination based on race, color, and national origin, but denies the motion with respect to plaintiff's claims of discrimination based on gender. The Court also grants defendant's motion with respect to plaintiff's retaliation claims.

### I. Plaintiff's Title VII Discrimination Claims Are Dismissed in Part

Plaintiff's claim that he was discriminated against because of his race, color, and national origin is dismissed, but plaintiff's gender-discrimination claim survives. Courts evaluate Title VII claims under the burden-shifting approach of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Doe v. Columbia Univ.*, 831 F.3d 46, 59 (2d Cir. 2016) (citing *Holcomb v. Iona Coll.*, 521 F.3d 130, 143 (2d Cir. 2008)); *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 252 (1981). Under this framework, the plaintiff first must establish a *prima facie* case of discrimination by showing "(1) that he belonged to a protected class; (2) that he was qualified for the position he held; (3) that he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Holcomb*, 521 F.3d at 138. Next, the burden shifts to the defendant "to articulate 'some legitimate, non-discriminatory reason' for its action." *Ibid.* (quoting *McDonnell Douglas*, 411 U.S. at 802). If the defendant succeeds, the burden shifts back to the plaintiff. At this phase, the plaintiff "may no longer rely on the presumption raised by the prima facie case, but may still prevail by showing,

without the benefit of the presumption, that the employer's determination was in fact the result of . . . discrimination." *Ibid*. The burden of persuasion remains on the plaintiff throughout. *Burdine*, 450 U.S. at 253.

### A. Plaintiff's Claim of Discrimination Based on Race, Color, and National Origin Is Dismissed.

Plaintiff fails to plead that he suffered an adverse employment action under circumstances giving rise to a plausible inference of discrimination based on his race, color, or national origin. "[T]here is no unbending or rigid rule about what circumstances allow an inference of discrimination when there is an adverse employment decision." *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir. 1996). However, a plaintiff's "mere subjective belief that he was discriminated against" based on a protected attribute "does not sustain a discrimination claim." *Gue v. Suleiman*, No. 10-CV-8958 (RLE), 2012 WL 4473283, at *8 (S.D.N.Y. Sept. 27, 2012) (citation omitted). Where, as here, there is no direct evidence of discrimination, "[a] plaintiff may support an inference of race discrimination by demonstrating that similarly situated employees of a different race were treated more favorably," but "[i]n order to make such a showing, the plaintiff must compare [him]self to employees who are 'similarly situated in all material respects.'" *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir. 1999) (citation omitted). This requires the plaintiff to "show that [his] co-employees were subject to the same performance evaluation and discipline standards" and "engaged in comparable conduct." *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000).

Plaintiff has not put forward evidence supporting a plausible inference of discrimination based on race, color, or national origin. Plaintiff asserts that he suffered adverse employment actions on several occasions. But he fails to allege that similarly situated employees outside of his protected classes were treated more favorably under comparable circumstances. For example,

8

plaintiff alleges that "Supervisor Michael Harris yelled at [him] for not answering his radio while [he] was on another call with the Chief of Sanitation" and that Harris "does not yell at other employees in this manner," Third. Am. Compl. ¶¶ 115–16, but plaintiff fails to plead that those other employees engaged in comparable conduct. Likewise, plaintiff asserts that he "is regularly reprimanded for behavior that white workers are not reprimanded for" and that he "is treated differently and more negatively than white employees . . . [and] employees from the United States," *id*. ¶¶ 73–74, but he fails to plead any facts showing that those employees are similarly situated in all material respects.[1] *See Graham*, 230 F.3d at 40. Moreover, plaintiff fails to identify *any* comparators with respect to his allegations that a supervisor "repeatedly disrespected [him] by using profanity towards him," *id*. ¶ 59; that a supervisor "yelled at [him] in a belligerent tone," *id*. ¶ 68; that a superintendent threatened to discipline him after overhearing another employee threaten to slap plaintiff, *id*. ¶ 57; and that a superintendent changed his Family Medical Leave Act status without his knowledge, *id*. ¶ 65.

Accordingly, defendant's motion for judgment on the pleadings is granted with respect to plaintiff's Title VII claim of discrimination on the basis of race, color, and national origin.

### B. Plaintiff's Gender Discrimination Claim May Proceed.

Plaintiff states a plausible claim that DSNY failed to promote him because of his gender. There is no dispute that plaintiff has carried his burden with respect to the first three elements of his *prima facie* case, but defendant argues that plaintiff fails to demonstrate that his failure to be

---

[1] These allegations are insufficient for two additional reasons. First, they are too conclusory. "While the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). Second, the complained-of conduct does not constitute an adverse employment action within the meaning of Title VII. "The Second Circuit has made clear that an '[a]n adverse employment action is a materially adverse change in the terms and conditions of employment,'" *Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 211 (E.D.N.Y. 2014) (quoting *Mathirampuzha v. Potter*, 548 F.3d 70, 78 n.7 (2d Cir. 2008)), and "[s]uch action must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities,'" *ibid*. (quoting *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012)).

promoted was because of his gender. Mot. 6–8 (Dkt. #38). This contention fails because plaintiff adequately pleads that DSNY promoted several less-qualified female candidates instead of him. *Yu v. New York City Hous. Dev. Corp.*, 494 F. App'x 122, 125 n.4 (2d Cir. 2012) ("Of course, the fourth element is also established if the employer fills the position with 'a person outside the protected class who was similarly or less qualified than' the plaintiff.") (citation omitted); *see Ellis v. Century 21 Dept. Stores*, 975 F. Supp. 2d 244, 271 (E.D.N.Y. 2013) (collecting cases). Specifically, plaintiff alleges that he scored a 100% on the applicable civil service examination, has a bachelor's degree in computer science and "a long tenure" with DSNY, and regularly assists his colleagues with information technology problems. Third Am. Compl. ¶¶ 30–33. Plaintiff further alleges that DSNY generally "promotes employees based on a ranked list of qualified candidates" but that it promoted at least one female candidate who was "ranked a lower priority for purposes of promotion than Plaintiff" and another female candidate who "was not in fact eligible to take [the] civil service exam . . . and could not, under Department policy, be considered for promotion to Computer Associate." *Id.* ¶¶ 34, 43. These allegations are sufficient to support a *prima facie* inference of discrimination. *See Yu*, 494 F. App'x at 125 n.4.

Defendant suggests that plaintiff's claim should be dismissed even if plaintiff has established a *prima facie* case, because it has articulated a legitimate, non-discriminatory reason for its promotion decisions that plaintiff has failed to refute. Specifically, defendant argues, its answer and attached exhibits show that the women promoted over plaintiff actually had "scores higher than Plaintiff's score." Mot. 8; *accord* Reply 6 (Dkt. #41). In deciding a motion for judgment on the pleadings, however, a court must "accept[] all factual claims in the complaint as true," *Lotes Co.,* 753 F.3d at 403, and defendant's allegations contradict plaintiff's complaint. *See* Third Am. Compl. ¶¶ 32, 36, 40, 43, 45. Similarly, in deciding such a motion, a court may not

10

"consider[] evidence extrinsic to the non-movant's pleading"—such as the answer and the attached exhibits—"without converting the motion to one for summary judgment." *Lively*, 6 F.4th at 306. I decline to exercise my discretion to convert defendant's motion to one for summary judgment here, as "plaintiff[] ha[s] not had the opportunity to take discovery from defendant[]." *Speedmark Transp. Inc. v. Mui*, 778 F. Supp. 2d 439, 440 n.1 (S.D.N.Y. 2011) (collecting cases).

Accordingly, defendant's motion for judgment on the pleadings is denied with respect to plaintiff's Title VII gender-discrimination claim.

## II. Plaintiff's Title VII Retaliation Claim Is Dismissed

Defendant's motion for judgment on the pleadings is granted as to plaintiff's Title VII retaliation claim. Title VII prohibits an employer from discriminating against an employee "because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). "Title VII retaliation claims are analyzed under the same *McDonnell Douglas* framework" that governs discrimination claims. *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 112 (2d Cir. 2019). In general, a "plaintiff must establish a *prima facie* case of retaliation by showing: (1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010) (citation and internal quotation marks omitted). But at the motion-to-dismiss stage, "the allegations in the complaint need only give plausible support to the . . . prima facie requirements." *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018). As a result, to survive a motion to dismiss, the plaintiff must only "plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against him, (2) because he has opposed any unlawful employment practice." *Ibid*. "If a plaintiff sustains the

11

initial burden, a presumption of retaliation arises," and the employer must "articulate a legitimate, non-retaliatory reason for the adverse employment action." *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005). "[O]nce an employer offers such proof, the presumption of retaliation dissipates and the employee must show that retaliation was a substantial reason for the adverse employment action." *Ibid*.

As explained below, plaintiff's retaliation claim is time-barred insofar as it is based on retaliatory acts before November 17, 2017, and plaintiff fails to state a claim for retaliation based on later events.

### A.      Plaintiff's Retaliation Claim Is Partially Time-Barred.

As I previously ruled, plaintiff's retaliation is time-barred as to all claims based on "retaliatory acts before November 17, 2017." Mem. & Order 11. Title VII requires someone who suffers discrimination to file a charge with the Equal Employment Opportunity Commission "within one hundred and eighty days after the alleged unlawful employment occurred," or if a state has an "agency with authority to grant or seek relief from such practice," then "within three hundred days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). Plaintiff filed a charge of sex discrimination with the New York State Division of Human Rights on September 13, 2018, so his claims are time-barred to the extent that they allege discriminatory or retaliatory acts preceding November 17, 2017. *Id*. at 7.

Under the law-of-the-case doctrine, courts generally adhere to prior rulings on an issue absent an intervening change in law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice. *See Vaughn v. Phoenix House New York Inc.*, 957 F.3d 141, 146 (2d Cir. 2020). Plaintiff argues only that "[i]ncidents that are time-barred show a pattern of harmful and retaliatory conduct in response to Plaintiff's earlier complaints against the Department." Third Am. Compl. ¶ 91. However, plaintiff's allegations refer only to specific

12

discrete acts. *See id*. ¶¶ 89–90. "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Nat. R.R. Pass. Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *see Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135, 157 (2d Cir. 2012) ("Discrete acts of this sort, which fall outside the limitations period, cannot be brought within it, even when undertaken pursuant to a general policy that results in other discrete acts occurring within the limitations period.").

Accordingly, plaintiff's retaliation claim is time-barred to the extent that it alleges retaliatory acts that occurred before November 17, 2017.

### B.      Plaintiff's Retaliation Claim Is Dismissed.

Plaintiff has failed to plausibly allege that he suffered retaliation for his opposition to an unlawful employment practice based on events from November 17, 2017 onward. An adverse employment action can give rise to a retaliation claim only if the action is "materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 63, 68 (2006) (citation and internal quotation marks omitted). "[T]rivial harms," such as "petty slights [and] minor inconveniences" do not constitute materially adverse employment actions. *Ibid.*; *Schultz v. Congregation Shearith Israel of City of New York*, 867 F.3d 298, 309 (2d Cir. 2017). Moreover, plaintiff must establish "that the retaliation was a 'but-for' cause of the employer's adverse action," *i.e.*, "that the adverse action would not have occurred in the absence of the retaliatory motive." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90–91 (2d Cir. 2015) (citations omitted). Plaintiff alleges that defendant retaliated against him by (1) transferring him from the day shift to the night shift, (2) filing complaints against him, and (3) offering him the opportunity to apply for a promotion if he dismisses the current case. Third Am. Compl. ¶¶ 81, 92, 109–11. These allegations fail to establish a plausible retaliation claim.

13

*1. Transfer to night shift.* Plaintiff's claim of retaliation based on his transfer to the night shift fails because plaintiff does not plausibly allege a causal connection between that transfer and any protected activity. Plaintiff alleges that "[o]n or about January 20, 2020, Defendant promoted a clerical associate," and "[*a*]*s a result*, the Department changed Plaintiff's work shift from the more desirable daytime shift to the less desirable overnight shift." *Id.* at ¶ 81 (emphasis added). Plaintiff does not suggest that he applied for the position to which another clerical associate was promoted. And his own account of why he was moved to the night shift—because of the promotion of a fellow clerical associate—does not support an inference that plaintiff was moved because he opposed an unlawful employment practice. Further, the transfer did not occur so close in time to plaintiff's filing of his lawsuit that temporal proximity by itself supports a causal inference. *See De Figueroa v. New York*, 403 F. Supp. 3d 133, 157 (E.D.N.Y. 2019) ("[M]ost courts in the Second Circuit have held that a lapse of time beyond two or three months will break the causal inference."); *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) ("[T]he temporal proximity must be 'very close.'") (citation omitted).

For similar reasons, plaintiff has failed to plausibly allege retaliation based on alleged underpayment of night-shift pay. Plaintiff alleges that defendant underpaid him "on multiple occasions" in early 2020 by improperly calculating the night-shift's pay differential, Compl. ¶ 56, but he concedes that DSNY's payroll department has since corrected the error, Third Am. Compl. ¶¶ 84, 87. To the extent that plaintiff alleges he is still owed backpay for these errors, *see id.* ¶ 88, plaintiff fails to plead facts suggesting a causal connection to any protected activity. Plaintiff cannot rely on temporal proximity because, as explained, a period of approximately six months between protected activity and an adverse employment action is too long for timing to support an inference of retaliation. *See De Figueroa*, 403 F. Supp. 3d at 157.

*2. Complaints regarding job performance.* Second, plaintiff cannot rest a retaliation claim on his allegations regarding complaints he received about his job performance. Plaintiff alleges that he received a "failure to supervise" complaint because he failed to call and report a truck accident to DSNY's Operations after a co-worker requested that he do so, Third Am. Compl. ¶¶ 99–101, although he has acknowledged that he "failed to follow department guidelines concerning personal injury and damage to city property," Second Am. Compl. 21. And plaintiff alleges that he received a complaint for refusing to sign his annual performance evaluation, Third Am. Compl. ¶ 107, although he has acknowledged that he had been told "that the signature does not signify agreement or disagreement" with the evaluation and that "failure to sign [the] document may result in disciplinary action," Second Am. Compl. 22–23. Plaintiff's own allegations indicate that he received these complaints for violations of workplace policies. And plaintiff makes no plausible allegation that these policies were enforced selectively. The closest he comes is his assertion that a superintendent neglected to report the same truck accident as plaintiff, yet did not receive a complaint. But plaintiff does not allege that the superintendent had been specifically asked to report the accident (as plaintiff notes he had). And, in any event, supervisors are not generally similarly situated to employees. *See Smalls v. Amazon.com Servs. LLC*, No. 20-CV-5492 (RPK) (RLM), 2022 WL 356432, at *6 (E.D.N.Y. Feb. 7, 2022); *Prescod v. Broad. Cos.*, No. 77-CV-6125 (JFK), 1985 WL 430, at *14 (S.D.N.Y. Mar. 19, 1985). Accordingly, plaintiff has not made out a *prima facie* case of retaliation based on these allegations.

*3. Possible promotion.* Finally, plaintiff fails to plausibly allege that he suffered a materially adverse employment action when he was told that he could be "on call" for a promotion if he dismissed the current case. Plaintiff does not allege facts suggesting that this offer of an opportunity for a promotion was a "materially adverse" response to his filing a lawsuit, meaning

15

a response that "well might have dissuaded a reasonable worker from" engaging in protected activity. *Burlington N. & Santa Fe Ry. Co*, 548 U.S. at 68. Plaintiff's account of this offer does not suggest that he was denied any opportunity or benefit that he would have had but for the filing of his lawsuit. For example, plaintiff does not suggest that absent his lawsuit, he would have been "on call" for promotion—but that after the filing, defendant conditioned this opportunity on dismissing the case. Without such assertions, plaintiff's on-call allegation suggest that plaintiff was offered a benefit he would not have had absent the filing of a lawsuit, as a condition of dismissing his case—akin to an offer of settlement. Because an offer of that type is not an *adverse* response to a lawsuit, plaintiff's on-call allegation does not state a claim for retaliation.[2]

### III.   Plaintiff's State-Law Claims Are Dismissed in Part

Plaintiff's NYSHRL and NYCHRL claims are dismissed to the same extent as plaintiff's corresponding Title VII claims.

#### A.   Plaintiff's Claim of Discrimination Based on Race, Color, and National Origin Is Dismissed.

Plaintiff's failure to show that he suffered an adverse employment action under circumstances giving rise to an inference of discriminatory intent based on race, color, or national origin, *see* pp. 8–9, *supra*, is fatal to his corresponding NYSHRL and NYCHRL claims. This Court "typically treat[s] Title VII and [NYSHRL] discrimination claims as analytically identical, applying the same standards of proof to both claims." *Salamon v. Our Lady of Victory Hosp.*, 514 F.3d 217, 226 n.9 (2d Cir. 2008). The NYCHRL is interpreted more broadly in favor of plaintiffs,

---

[2] To the extent that plaintiff claims he suffered additional instances of alleged retaliation—*i.e.*, that he "has been disrespected and talked down to," Third Am. Compl. ¶ 95, that defendant has on multiple occasions "turned off the heat in [his] office," *id*. ¶ 94, that he has occasionally been asked to do other employees' work assignments, *id*. ¶ 96, and that a supervisor yelled at him for not answering his radio while he was on another call with the Chief of Sanitation, *id*. ¶ 115—these allegations constitute the sort of "petty slights [and] minor inconveniences" that the Supreme Court has made clear do not give rise to a retaliation claim. *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68; *see Schultz*, 867 F.3d at 309.

*see Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013), but "a plaintiff must still link the adverse employment action to a discriminatory motivation," *Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 258 (E.D.N.Y. May 24, 2012). Because plaintiff has failed to link any adverse employment action to discriminatory intent based on race, color, or national origin, defendant's motion for judgment on the pleadings is granted as to these claims.

### B. Plaintiff's Gender Discrimination Claim May Proceed.

Because plaintiff's Title VII gender-discrimination claim survives, *see* pp. 9–11, *supra*, his NYSHRL and NYCHRL gender-discrimination claims also survive. *Salamon*, 514 F.3d at 226 n.9; *Farmer v. Shake Shack Enters.*, 473 F. Supp. 3d 309, 327 (S.D.N.Y. 2020) ("Because [plaintiff] has adequately pled sex-discrimination claims under Title VII and the NYSHRL, her similar claim under the broader NYCHRL also necessarily survives.").

### C. Plaintiff's Retaliation Claim Is Dismissed.

Plaintiff's NYSHRL and NYCHRL retaliation claims fail because of the same deficiencies that defeated his Title VII retaliation claim. "The same standards govern retaliation claims under Title VII and the NYSHRL." *McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 66 (S.D.N.Y. 2020). "Retaliation claims under the NYCHRL are subject to a broader standard than under the NYSHRL and Title VII" in that the NYCHRL "only requires [plaintiffs] to show that something happened that was reasonably likely to deter a person from engaging in protected activity," *id*. at 67 (citation omitted), but "even under the broader NYCHRL retaliation provision, a plaintiff must still plead some facts that [his] employers' actions disadvantaged [him] and that the action was connected to [his] protected activity," *Gaughan v. Rubenstein*, 261 F. Supp. 3d 390,

17

419 (S.D.N.Y. 2017) (citation and internal quotation marks omitted).[3]  As discussed above, *see* pp. 14–15, *supra*, plaintiff fails to establish a causal connection between protected activity and either (i) his transfer to the night shift or (ii) the complaints that he received about his job performance.  Moreover, plaintiff fails to allege that he was disadvantaged by being told that he could be "on call" for a promotion if he dismissed the current case.  *See* pp. 15–16, *supra*.  Accordingly, plaintiff's NYSHRL and NYCHRL retaliation claims are dismissed.

## CONCLUSION

Defendant's motion for judgment on the pleadings is granted in part and denied in part.  Plaintiff's gender-discrimination claims under Title VII, the NYSHRL, and the NYCHRL survive.  Plaintiff's claims of retaliation and discrimination on the basis of his race, color, and national origin under Title VII, the NYSHRL, and the NYCHRL are dismissed.  Plaintiff may file a motion seeking leave to file a fourth amended complaint within thirty days.  Any such motion should include the proposed fourth amended complaint as an exhibit and explain why leave to amend should be granted.  Absent an amended complaint, litigation will continue on plaintiff's gender-discrimination claims.

SO ORDERED.

       /s/ Rachel Kovner  
       RACHEL P. KOVNER  
       United States District Judge

Dated:     September 30, 2022  
              Brooklyn, New York

---

[3] "The New York State Legislature passed several amendments to the NYSHRL in June 2019, the effect of which is to render the standard for claims closer to the standard under the NYCHRL. . . .  Significantly, however, these amendments only apply to claims that accrue on or after the effective date of October 11, 2019." *Wellner v. Montefiore Med. Cntr.*, 17-CV-3479 (KPF), 2019 WL 4081898, at *5 n.4 (S.D.N.Y. Aug. 29, 2019).  But as discussed below, plaintiff's NYSHRL claim fails even if it is analyzed under the NYCHRL's more lenient standard.  *See Kraiem v. JonesTrading Inst. Servs. LLC*, 571 F. Supp. 3d 53, 60 n.6 (S.D.N.Y. 2021).